**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Doddridge,<br><br>          Plaintiff,<br>vs.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-20-01926-PHX-SPL<br><br>**ORDER** |

Plaintiff Laura Doddridge seeks judicial review of the denial of her application for Social Security Disability Insurance under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 19), Defendant Commissioner of Social Security Administration's Answering Brief (Doc. 27), Plaintiff's Reply Brief (Doc. 31), and the Administrative Record (Doc. 16). Upon review, the Court affirms the Administrative Law Judge's decision (AR 14–28).[1]

**I.     BACKGROUND**

Plaintiff filed a Title II application for disability insurance benefits on September 27, 2017, for a period of disability beginning on October 21, 2014. (AR 17). Plaintiff testified at an administrative hearing on December 4, 2019 (AR 37–81), after which the Administrative Law Judge ("ALJ") found Plaintiff was not disabled (AR 14–28). On August 13, 2020, the Appeals Council denied Plaintiff's request for review and adopted

---

[1] Administrative Record (*see* Doc. 16).

the ALJ's decision as the agency's final decision. (AR 1–3).

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following medically determinable impairments: obesity, diabetes, cervical degenerative disc disease, asthma, and lumbar degenerative disc disease. (AR 20). Ultimately, the ALJ concluded that Plaintiff "was not under a disability within the meaning of the Social Security Act from October 21, 2014, through the date last insured." (AR 18).

## II.   LEGAL STANDARD

A person is considered "disabled" for the purpose of receiving social security benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing

20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id*. At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

### III.   DISCUSSION

Plaintiff argues that the ALJ erred by (1) discrediting the medical opinions of Plaintiff's treating and examining doctors, Dr. Julian Grove and Dr. Vicky Chen-Yang; (2) rejecting Plaintiff's symptom testimony; (3) rejecting lay witness testimony; and (4) determining at step five that Plaintiff could perform certain jobs. The Court will address the arguments in turn.

#### A.   Medical Opinions

Plaintiff argues that the ALJ erred in discrediting the medical opinions of treating pain specialist Dr. Grove and treating physician Dr. Chen-Yang. (Doc. 19 at 9–14). Previously, the Ninth Circuit recognized "a hierarchy among the sources of medical opinions." *Singer v. Comm'r of Soc. Sec. Admin.*, No. CV-18-01767-PHX-JJT, 2019 WL 9089997, at *2 (D. Ariz. Oct. 11, 2019) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). This hierarchy was known as the treating physician rule, which

3

generally afforded greater weight to the opinions of treating physicians. *Orn*, 495 F.3d at 632; *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "In March of 2017, The Social Security Administration ("SSA") amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to claims filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c, and provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The new regulations require the ALJ to articulate how persuasive each medical opinion is according to several enumerated factors, including (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). The most important factors in evaluating an opinion's persuasiveness are the first two: supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

The parties disagree as to whether the Ninth Circuit's "clear and convincing" and "specific, legitimate" standards for rejecting the opinion of a treating or examining medical source survived the amendments to the regulations. Courts in this Circuit and in this District have also disagreed on the issue. *See Tillman v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01551-PHX-SPL, 2022 WL 58685, at *4 (D. Ariz. Jan. 6, 2022) (listing cases). After considering the possible standards in *Tillman*, this Court concluded that it would "defer to the SSA's 2017 regulations and assess whether the ALJ's reasoning regarding the persuasiveness of each opinion is supported by substantial evidence." *Id.* (citing *Orn*, 495 F.3d at 630; 42 U.S.C. § 405). The Court will do the same here.

    *1.*  *Dr. Grove*

In two opinions dated August 12, 2019 and November 14, 2019, Dr. Grove opined

that Plaintiff had significant functional limitations, including an inability to stoop, crouch and climb stairs; the ability to reach with her arms for only 0–5% of the workday; and the ability to sit for about two hours of the workday and stand/walk for less than two hours. (AR 1116–24, 1715–16). The ALJ found Dr. Grove's assessment unpersuasive for several reasons.

First, the ALJ determined that Dr. Grove's opinion that Plaintiff can use her arms for only 0–5% of the workday is inconsistent with his treatment notes stating that Plaintiff has 5/5 strength. (AR 26, 1727). Plaintiff argues that there is no inconsistency in those findings, pointing to a statement submitted by Dr. Grove to the Appeals Council in which he stated that strength and the use of the arms over an eight-hour workday "are two totally different aspects." (AR 36); *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159–60 (9th Cir. 2012) (holding that evidence submitted for the first time to the Appeals Council "is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence"). Even absent Dr. Grove's statement, the Court agrees with Plaintiff that full strength is not inconsistent with limited use of extremities. *See, e.g.*, *Roberts v. Berryhill*, No. 17-cv-00307-JCS, 2018 WL 1569826, at *13 (N.D. Cal. Mar. 30, 2018); *Cook v. Berryhill*, No. 3:17-CV-05660-JRC, 2018 WL 4335609, at *3 (W.D. Wash. Sept. 11, 2018). Still, Defendant further argues that "Dr. Grove still did not explain or provide any objective medical evidence to support his near-preclusion on Plaintiff's ability to use her arms." (Doc. 27 at 11 n.4). But neither the ALJ nor the Appeals Council provided that reason, and the Court "may only consider the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she] did not rely." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018) (internal quotation marks omitted). Accordingly, the Court finds that this reason is not evidence to support the ALJ's determination. Nevertheless, one erroneous reason is not conclusive, as the ALJ's determination need only be supported by substantial evidence.

Next, the ALJ reasoned that Dr. Grove's opinions are inconsistent with records

showing that Plaintiff responded well to treatment and reported improvement after a cervical fusion surgery performed April 29, 2019. (AR 26, 780, 1131). While Plaintiff admits that her condition did improve, she argues that it was only temporary and that she continues to be severely impaired, again citing Dr. Grove's statement to the Appeals Council. (Doc. 19 at 12). Dr. Grove's statement is confusing as to this point, however. He checked the box "Yes" in response to the question, "Do you agree with the ALJ's contention that [your] opinions . . . [are] not supported by the record" showing Plaintiff's improvement, suggesting that he himself believed his opinions lacked support. (AR 36). To the side, though, Dr. Grove wrote, "Yes improvement however temporary & continued severe impairment." (AR 36). Given the ambiguity of Dr. Grove's statement and considering the evidence of improvement in the record, the ALJ—and ultimately the Commissioner—did not err in citing this as a reason to discredit Dr. Grove's opinion.[2] *See Stickney v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01407-PHX-SPL, 2021 WL 3782835, at *4 (D. Ariz. Aug. 26, 2021) ("When there are conflicts within the record, it is the ALJ's responsibility to resolve them." (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)).

Finally, the ALJ found that Dr. Grove did not explain his opinions on restrictive limitations, specifically noting that he gave no evidence to support his opinion that Plaintiff would be unable to sit for two hours in an eight-hour workday. (AR 26). Plaintiff does not rebut this point. Indeed, the amended regulations provide, "The more relevant the objective medical evidence and *supporting explanations* presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §404.1520c(c)(1) (emphasis added). The lack of explanation is proper evidence in support of the ALJ's finding that Dr. Grove's opinion

---

[2] In her Reply Brief, Plaintiff argues that the ALJ should have made two separate evaluations of Plaintiff's residual functional capacity—one for Plaintiff's condition prior to surgery and one for Plaintiff's condition after surgery. (Doc. 31 at 10). Because it was not raised in the Opening Brief, the argument was waived. *See Thrasher v. Colvin*, 611 F. App'x. 915, 918 (9th Cir. 2015).

6

was unpersuasive.

Plaintiff makes an additional argument that Dr. Grove's opinion is supported by objective medical evidence, including an x-ray, a nerve conduction study, and several MRIs. (AR 439, 561, 772, 1135, 1141). The ALJ considered that evidence earlier in her decision, however, and found that it did not support the full extent of the alleged severity of Plaintiff's condition. (AR 24). To be sure, the ALJ did not specifically address the diagnostic evidence in her discussion of Dr. Grove's opinion, but she did state that Dr. Grove's "opinion of extreme limitations is not supported by the record as a whole, which is discussed above." (AR 26). The Court thus finds that the ALJ rationally interpreted the evidence in the record and properly assessed the supportability and consistency of Dr. Grove's opinions as required. The ALJ's conclusion that Dr. Grove's opinion was unpersuasive is supported by substantial evidence.

### 2.   *Dr. Chen-Yang*

In an opinion dated October 16, 2019, Dr. Chen-Yang opined that Plaintiff had significant functional limitations, including an inability to squat or climb; an inability to grasp, push, or pull with her left arm; and the ability to stand and walk for only 30 minutes of an eight-hour workday. (AR 1546–47). The ALJ found her opinion unpersuasive. (AR 26).

First, the ALJ stated that Dr. Chen-Yang's opinion that Plaintiff could not grasp, push, or pull with her left arm "is incongruent with the normal electrodiagnostic studies, the lack of clinical findings in examinations and the claimant's stated ability to play online video games." (AR 26). Plaintiff argues that in fact, an electrodiagnostic study in the record was abnormal. (Doc. 19 at 14 (citing AR 561)). As Defendant correctly notes, however, the study that Plaintiff cites revealed abnormal findings of Plaintiff's "bilateral lower extremities"—her legs. (AR 561). On the other hand, two electrodiagnostic studies of Plaintiff's arms showed normal results. (AR 1710–13). The ALJ was correct, then, that Dr. Chen-Yang's opinions as to Plaintiff's arm limitations are inconsistent with the electrodiagnostic studies.

Plaintiff also argues that Plaintiff, along with lay witnesses, testified that she is no longer able to play video games, contrary to the ALJ's reasoning. (Doc. 19 at 14). This is not an entirely accurate characterization of the testimony, however. Plaintiff testified that it is "extremely painful and uncomfortable . . . to sit in front of a keyboard" because she "can't hold [her] hands to do the typing" and that due to neck pain, she no longer sits at her computer. (AR 60). Still, she testified that she continues to use her iPad. (AR 60). Moreover, the lay witness statements that Plaintiff cites indicate that it is painful for Plaintiff to sit for long periods of time to play video games, but that she still plays them weekly. (AR 268–69, 285–86). The ALJ could thus rationally conclude from the evidence that Plaintiff plays video games and that her ability to do so contradicts Dr. Chen-Yang's findings as to her arm's functional abilities.

Finally, the ALJ noted that Dr. Chen-Yang explained in her opinion that Plaintiff "has significant gait instability," (AR 1547), but that treatment notes repeatedly reflect a normal gait. (AR 26 (citing AR 778–80, 1127, 1143). Plaintiff argues that treatment notes *do* show gait instability on three occasions. First, a consultative psychological examiner noted that Plaintiff gait was "slow and unsteady." (AR 697). As Defendant points out, however, the ALJ specifically addressed that note in her decision and determined, correctly, that it was not a persistent finding.  (AR 24). Second, a physical therapist stated that Plaintiff's gait was "slow, guarded" with a "wide base of support" and "absence of trunk rotation." (AR 498). But Defendant argues that a "slow and cautious" gait is different from a significantly unstable gait (Doc. 27 at 14), and the Court agrees that the ALJ could properly conclude that the physical therapist's record did not support Dr. Chen-Yang's opinion. Third, Dr. Grove marked in his August 12, 2019 opinion that Plaintiff had an abnormal gait (AR 1122), but his treatment notes from the same day indicate that Plaintiff's gait was normal (AR 1460). Given the inconsistency, Dr. Grove's notation of an abnormal gait does not negate the ALJ's conclusion that treatment notes documented a normal gait. *See Stickney*, 2021 WL 3782835, at *4. In sum, the ALJ properly considered the record as a whole, drew rational inferences, and determined

based on substantial evidence that Dr. Chen-Yang's opinion was unpersuasive.

**B.     Symptom Testimony**

Plaintiff next argues the ALJ erred in rejecting her subjective symptom testimony (Doc. 19 at 14–16). An ALJ performs a two-step analysis to evaluate the credibility of a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citation omitted). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 24).

The ALJ detailed many reasons why she found that Plaintiff's testimony was not credible. First, she determined that Plaintiff's "allegations regarding the severity of her symptoms and limitations are not consistent with the level of activity she described." (AR 24). The ALJ noted that Plaintiff reported traveling to New Mexico, planning a trip to Hawaii, walking, biking, and working out at a gym. (AR 24).[3] The ALJ concluded that

---

[3] The ALJ also noted that Plaintiff reported being unable to cook or put clothes in the dryer but that she did not recount those difficulties to two consultative examiners.

9

Plaintiff's ability to travel was inconsistent with her testimony that she spends about 15 days per month bedridden, and that her activities of daily living are not limited to the extent that would be expected given her allegations of disabling pain. (AR 24). The Court finds that Plaintiff's two instances of travel—which she testified required additional medication, accommodations, and assistance (AR 57)—"are not clear and convincing evidence that the claimant led a life that is not compatible with disabling pain and limitations." *Wilson v. Comm'r of Soc. Sec.*, 303 F. App'x. 565, 566 (9th Cir. 2008) (finding that plaintiff occasionally driving to Phoenix and taking a vacation to Hawaii was not a clear and convincing reason to discredit symptom testimony where the travels were "sporadic and punctuated with rest" (internal quotation marks omitted)). On the other hand, Plaintiff's exercise habits do contradict Plaintiff's testimony. The ALJ cited records in which Plaintiff's primary care doctor noted "Exercise: 3-4 days a week with walking 2-3 miles" (AR 1584) and "Exercise: . . . Has reduced treadmill use. Uses stationary bike 3x/week at gym. Cardio machines." (AR 1592). This is plainly inconsistent with Plaintiff's testimony that "significant exercise" for her, on a good day, is walking six blocks with her dog. (AR 56). Thus, this is a clear and convincing reason for rejecting her testimony. *See Plunk v. Astrue*, No. 6:11-cv-06286-SI, 2013 WL 1412942, at *7 (D. Or. Apr. 8, 2013) (finding claimant's reports to her doctor that she engaged in extended walking and biking was a clear and convincing reason to discredit her testimony when she testified that she could only walk a short distance before becoming exhausted).

In addition, the ALJ discounted Plaintiff's testimony because—contrary to her claims of continued debilitation—medical records show her condition improved with pain management and treatment, including surgery. (AR 25). Indeed, the ALJ cited a note from Plaintiff's surgeon that three months after her cervical fusion, Plaintiff was "doing

---

(AR 24). Those difficulties are not *inconsistent* with anything in the examiners' reports, however, and it is not apparent that Plaintiff was asked about such functional abilities by the examiners or that the examiners would have noted them in their documentation. (AR 440–44, 693–701).

very well" and "feels good" and that her preoperative complaints had resolved, (AR 1131), as well as another record from six months after the surgery where the surgeon wrote, "She is doing very well and feels great. . . . She has no appreciable complaints." (AR 1708). Plaintiff counters that Dr. Grove noted that Plaintiff continued to have significant limitations after surgery. (Doc. 19 at 15). But Plaintiff's cites only to Dr. Grove's opinions, which the Court has found the ALJ properly discredited.

Finally, the ALJ discussed at length inconsistencies between Plaintiff's symptom testimony and findings from diagnostic tests and objective clinical examinations. (AR 24–25). The ALJ offered numerous specific examples and citations to the record in explaining these reasons, which Plaintiff does not counter in either her Opening Brief or Reply Brief. For example, the ALJ noted that a negative electromyogram and nerve conduction study contradicted Plaintiff's testimony that she cannot pick up a three-pound pillow or use a keyboard to type. (AR 24). Further, clinical examinations consistently found normal strength and sensation in the bilateral lower and upper extremities, showing an ability to sit, stand, lift, and carry. (AR 24). Likewise, regarding Plaintiff's claims of numbness and extreme difficulty using her hands, the ALJ stated, "[O]ne would expect to see profound clinical findings such as atrophy of the muscles in the hands and substantial weakness. Yet, clinical examination prior to her fusion showed only 4/5 left finger extension strength." (AR 24). These, and the ALJ's other undisputed, detailed examples of contradictions based on diagnostic findings and objective clinical examinations, provide more clear and convincing reasons for rejecting Plaintiff's symptom testimony. The ALJ did not err.

### C.   Lay Witness Testimony

Plaintiff next argues that the ALJ erred by rejecting the lay witness testimony submitted by her husband, her stepfather, and her friend. (Doc. 19 at 16–18). As to this testimony, the ALJ wrote: "[T]he undersigned did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c). Specifically, here, the undersigned has considered but provided <u>no analysis</u>

for third party statements submitted." (AR 25). Plaintiff argues that the ALJ was required to provide germane reasons for discounting the testimony of the witnesses, citing Ninth Circuit precedent. (Doc. 19 at 16–17 (citing *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993)). Defendant disagrees, arguing that amendments to the SSA regulations supersede the "germane reasons" standard.

The Court need not resolve the applicable standard because even assuming that the ALJ was required to provide germane reasons, her failure to do so was harmless. "Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Caleb H. v. Saul*, No. 4:20-CV-5006-EFS, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020); *see also Molina v. Astrue*, 674 F.3d 1104, 1114–15 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502; *Thomas v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01787-PHX-MTL, 2022 WL 292547, at *7 (D. Ariz. Feb. 1, 2022). Here, the testimony submitted by Plaintiff's husband, stepfather, and friend repeats Plaintiff's testimony as to her pain, functional limitations, activities, behaviors, and hobbies. The Court already found that the ALJ had clear and convincing reasons to reject Plaintiff's own testimony, so it follows that the ALJ had germane reasons to reject the lay witness testimony. Thu, even if the ALJ erred by not analyzing the lay witness testimony, the error was harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." (internal quotation marks and citations omitted)).

### D.    Step-Five Finding

Finally, Plaintiff argues that the ALJ's step-five analysis is not supported by substantial evidence. (Doc. 19 at 18). Plaintiff offers minimal argument on this issue, but asserts that because two of the three jobs identified by the ALJ at step five are semi-

skilled jobs and neither the ALJ nor the vocational expert identified any transferable skills, the step-five finding was in error. (Doc. 19 at 18). Defendant counters that even if there was error, it is necessarily harmless. (Doc. 27 at 23–24). The disability inquiry reaches step five only if the ALJ determines at step four that a claimant cannot perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4). Here, Plaintiff does not challenge the ALJ's step-four determination that she could perform past relevant work. As a result, the step-five finding has no effect on the ALJ's ultimate determination that Plaintiff is not disabled. Accordingly, the Court need not analyze this issue because any error is harmless. *See Treichler*, 775 F.3d at 1099.

## IV. CONCLUSION

The Court finds no reversible error in this case and concludes that the ALJ's decision was supported by substantial evidence. Accordingly,

**IT IS ORDERED** that the January 22, 2020 decision of the ALJ (AR 14–28) is **affirmed**. The Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 7th day of March, 2022.

Honorable Steven P. Logan
United States District Judge